FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILLY RAY RILEY,
*Petitioner-Appellant*,

v.

E. K. MCDANIEL,
*Respondent-Appellee.*

No. 11-99004

D.C. No.
3:01-cv-00096-RCJ-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
April 8, 2015—Pasadena, California

Filed May 15, 2015

Before: Stephen Reinhardt, M. Margaret McKeown,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's denial of Billy Ray Riley's habeas corpus petition challenging his Nevada conviction and death sentence for murder, and remanded with instructions to grant the writ unless the State of Nevada elects to pursue a new trial within a reasonable amount of time.

Reviewing *de novo*, the panel held that because Nevada law treated deliberation as a distinct element of first-degree murder at the time Riley was convicted and at the time his conviction became final, the district court's use of an instruction during the guilt phase of trial defining deliberation as a part of premeditation, rather than as a separate element, constituted a due process violation.

The panel held that Riley was prejudiced because the jury was presented with significant evidence of Riley's cocaine intoxication and emotional agitation – evidence which might well have created a reasonable doubt as to whether the murder was committed with deliberation as well as with premeditation.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David S. Anthony (argued), Assistant Federal Public Defender, Rene L. Valladares, Federal Public Defender, and Sarah Hensley, Assistant Federal Public Defender, Las Vegas, Nevada, for Petitioner-Appellant.

Robert E. Wieland (argued), Senior Deputy Attorney General, Appellate Division; Adam Paul Laxalt, Attorney General, Reno, Nevada, for Respondent-Appellee.

**OPINION**

REINHARDT, Circuit Judge:

## I. Introduction

Billy Ray Riley was convicted of the robbery and murder of Albert "Ramrod" Bollin in 1990. With respect to the robbery conviction, Riley was adjudicated to be an habitual criminal and sentenced to life without the possibility of parole. With respect to the murder conviction, Riley was sentenced to death. Only the murder conviction and death sentence are challenged here.

Riley raises a number of ineffective assistance of trial counsel and instructional error challenges to his murder conviction and sentence. As pertinent here, Riley argues that one of the guilt-phase instructions given at his trial violated his due process rights by advising the jury that if it finds "premeditation," it has necessarily found "deliberation." This instruction, Riley contends, relieved the state of its burden to prove every element of the offense. The district court found

that the state trial court had committed constitutional error in giving this instruction, but concluded that the error was harmless.

We agree that constitutional error occurred, but conclude that Riley was prejudiced as a result, and that his murder conviction and death sentence are therefore invalid. The unchallenged robbery conviction and the accompanying sentence of life without parole remain in effect.[1]

## II. Facts[2]

Riley and his girlfriend, Kim Johnson, were guests at the home of Leotis Gordon, where Bollin, a drug dealer, was living. Darrell Lee Jackson – the only eyewitness to the murder – testified as follows: Riley, Bollin, and Jackson were together in a bedroom-lounge when Riley became "emotional and angry about the treatment he had received from drug dealers," and suggested that he would "start robbing drug dealers who did not treat him appropriately." Jackson and Bollin gave some cocaine to Riley, who smoked it as Bollin took a shower. After Bollin finished his shower, the three men moved to Bollin's room. Riley told Bollin that his cocaine was "mine now," and Bollin replied, "you're going to have to kill me first"; Riley then asked Bollin whether he

---

[1] Because we grant relief on this claim, we need not address the other guilt- and penalty-phase claims that Riley raises in his petition. We note, however, that the record reflects multiple instances of egregiously deficient performance on the part of Riley's trial counsel, with respect to both the guilt and penalty phases, due at least in part to the seriously inadequate public defense infrastructure in Clark County some quarter of a century ago.

[2] *See Riley v. State*, 808 P.2d 551, 552–54 (Nev. 1991).

was "ready to die," and Bollin requested permission to "finish taking this hit." After Bollin put down the pipe, he told Riley that he was ready to die, and Riley shot him in the chest with a shotgun.

Johnson also testified: she was cooking in the kitchen when she heard Bollin say to someone, "if you're going to kill me, just kill me," and then she heard a gunshot. Johnson found Riley holding the shotgun and Bollin clutching his chest. She left the room and went to speak with Gordon in his room across the hall when Riley entered and told her to get a box of shotgun shells.

Gordon, too, testified: he was awakened by a shotgun blast, and was trying to climb out his window when Riley appeared in the doorway, holding the shotgun, and told him to "just hold it." Riley told Jackson to take Bollin's money and drugs, and Gordon, who was afraid of Riley, then suggested that Riley rob another drug dealer, "L.L." Riley, Jackson, Johnson, and Gordon looked for "L.L." but did not find him at his home, so they drove around in another woman's car for some time. Eventually, the group disbanded.[3]

### III.  Standard of Review

Riley's challenge to the premeditation instruction given at his trial was presented not in his first state habeas petition, which was adjudicated on the merits, but in his second state

---

[3] We do not discuss the other evidence presented at trial – specifically, ballistics evidence presented by a coroner and the amateur forensic measurements made by a defense investigator – because it is not relevant to the claim on which we grant relief.

habeas petition, which was denied on a procedural ground, and not adjudicated on the merits. *See Lambert v. Blodgett*, 393 F.3d 943, 966 (9th Cir. 2004). Normally, procedural default will preclude consideration of the claim on federal habeas review. However, the procedural ground at issue here, Nev. Rev. Stat. § 34.810, has been held to be inadequate to bar federal review because the rule was not regularly and consistently applied. *Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002).[4]

Because no state court has adjudicated this claim on the merits, and the state has established no procedural bar to its consideration, the strictures of 28 U.S.C. § 2254(d) do not apply, and our review is *de novo*.[5] *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002).

## IV.  Premeditation Instruction

Riley challenges a jury instruction given during the guilt phase of his trial. This instruction is commonly referred to by

---

[4] *Valerio* considered the application of § 34.810 at a time prior to the denial of Riley's second state habeas petition. However, as the district court correctly concluded, the state bore – and failed to meet – the burden of demonstrating that, since *Valerio*, state courts have begun to regularly and consistently apply § 34.810 to habeas cases. *See King v. Lamarque*, 464 F.3d 963, 967 (9th Cir. 2006); *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003).

[5] Hence, we need not address Riley's argument that the district court's dismissal of his first federal petition – filed before April 24, 1996 – for failure to exhaust constituted an administrative closure with leave to reopen, and that the Antiterrorism and Effective Death Penalty Act therefore does not apply. *See Riner v. Crawford*, 415 F. Supp. 2d 1207, 1209 n.1 (D. Nev. 2006). Riley's motion to take judicial notice of documents in support of this argument is therefore denied as moot.

the name of the Nevada Supreme Court case in which it was first discussed, *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992), but it was used by Nevada trial courts – as in Riley's own case – prior to that time. The instruction defined deliberation as a part of premeditation, rather than as a separate element.

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.

> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.

No other instruction at Riley's trial gave independent meaning to "deliberate."[6]

It is clear, however, that at the time Riley was tried in 1990, and at the time his conviction became final in 1991,[7]

---

[6] In fact, another instruction exacerbated the problem; it informed the jury that the difference between first- and second-degree murder is that the latter is committed "without the admixture of premeditation." This instruction made no reference to deliberation.

[7] The Nevada Supreme Court now recognizes that defendants must be afforded the benefit of changes in state law narrowing the scope of a criminal statute that occur prior to their convictions becoming final. *See Nika v. State*, 198 P.3d 839, 850 & nn.72–74 (Nev. 2008) (applying

deliberation was a discrete element of first-degree murder in Nevada. In *Hern v. State*, 635 P.2d 278, 280 (Nev. 1981), decided a decade earlier,**[8]** the Nevada Supreme Court explained that "[i]t is clear from the statute that all three elements, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder." Then, a year after Riley's conviction became final, the Nevada Supreme Court changed its mind in *Powell v. State*, 838 P.2d 921 (Nev. 1992), *vacated on other grounds*, 551 U.S. 79 (1994). In approving the use of the *Kazalyn* instruction, it held that "deliberate, premeditated and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result." *Id.* at 927. It called the three elements "redundan[t]." *Id.* Less than a decade later, in *Byford v. State*, 994 P.2d 700 (Nev. 2000), the Nevada Supreme Court again reversed course, abrogating *Powell*. It concluded that *Powell* – and the *Kazalyn* instruction it approved – had "confus[ed] . . . premeditation and deliberation," and "underemphasized the element of deliberation." *Id.* at 713. The instruction, the court held, "blur[red] the distinction between first- and second-degree murder," and subsequent case law's "further reduction of premeditation and deliberation to simply 'intent' unacceptably carrie[d] this blurring to a complete erasure." *Id.*

---

*Bunkley v. Florida*, 538 U.S. 835, 841–42 (2003)). At the time that Riley's conviction became final, however, Nevada courts gave such changes in state law only prospective effect. *See Garner v. State*, 6 P.3d 1013, 1025 (Nev. 2000). The distinction is irrelevant for present purposes.

**[8]** The *Hern* rule was by no means novel. *See, e.g.*, *State v. Hing*, 16 Nev. 307, 308 (1881) ("[W]illfulness, deliberation, and premeditation . . . are essential constituents of the crime of murder of the first degree.").

In *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), we concluded that the use of the *Kazalyn* instruction violated the Due Process Clause of the United States Constitution. *Polk* held that the instruction "relieved the state of the burden of proof on whether the killing was deliberate as well as premeditated." *Id.* at 910 (applying *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979)). In *Polk*, the petitioner had been convicted after *Powell* but before *Byford*; we concluded that Nevada law during that time included deliberation as a distinct element because, we reasoned, *Byford* was not a change in Nevada law but rather a "reaffirm[ation]" that its first-degree murder statute contained three *mens rea* elements. *Id.* After *Polk* was decided, however, the Nevada Supreme Court clarified in *Nika v. State*, 198 P.3d 839, 849 (Nev. 2008), that "*Byford* announced a change in state law." On that basis we partially overruled *Polk*, holding in *Babb v. Lozowsky*, 719 F.3d 1019, 1028–30 (9th Cir. 2013), that the use of the *Kazalyn* instruction between *Powell* and *Byford* did not constitute a due process violation because during that time, first-degree murder in Nevada included only one (merged) *mens rea* element, which the instruction accurately described. *Babb* did nothing, however, to disturb *Polk*'s underlying analysis: *Polk* continues to dictate that the *Kazalyn* instruction violates due process if, at the time it was given, Nevada law required the state to prove deliberation as a discrete *mens rea* element.

As already noted, at the time of Riley's trial and at the time his conviction became final, Nevada first-degree murder law did indeed contain three separate *mens rea* elements. In *Byford* and *Nika*, the Nevada Supreme Court reiterated that *Powell*, decided in 1992, after Riley's conviction became final, represented a departure from prior precedent holding that the state was required to prove deliberation separately

from premeditation. *Byford* explained that it was a "rather recent phenomenon" that deliberation was "neglect[ed] . . . as an independent element," and traced this trend to *Powell*, which "overlooked earlier pronouncements [such as *Hern*] which recognized that 'deliberate' and 'premeditated' define distinct elements." 994 P.2d at 713–14. *Nika* characterized *Byford* as "abandon[ing] the line of cases *starting with Powell*." 198 P.3d at 847 (emphasis added); *see also id.* at 849 ("*Byford* 'abandoned' that precedent – *Powell* and its progeny.").

Because Nevada law treated deliberation as a distinct element of first-degree murder at the time Riley was convicted and at the time his conviction became final, the use of the *Kazalyn* instruction at his trial constituted a due process violation under the United States Constitution. *Polk*, 503 F.3d at 910.

## V.  Prejudice

To obtain relief, Riley must also show that this instructional error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). As we held in *Polk*, if "we are left in grave doubt about whether the jury would have found deliberation on [Riley's] part if it had been properly instructed," we must conclude that the error was not harmless. 503 F.3d at 913 (internal quotation marks omitted). We are indeed left in grave doubt. The jury was presented with significant evidence of Riley's cocaine intoxication and emotional agitation – evidence which might well have created a reasonable doubt as to whether the murder was committed with *deliberation* as well as with premeditation.

To convict a defendant of first-degree murder under Nevada law, a jury must find that he committed the murder with "coolness and reflection." *Byford*, 994 P.2d at 714. The defendant must have engaged in a "dispassionate weighing process and consideration of consequences before acting"; if his decision to kill was "formed in passion," and that passion had not subsided by the time the murder was carried out, it was not deliberate. *Id.* The element of deliberation has been so understood by Nevada courts since well before Riley's trial. *Ogden v. State*, 607 P.2d 576, 579 (Nev. 1980), reiterated that "deliberate" should be given its "ordinary dictionary meaning[]," citing with approval *People v. Anderson*, 447 P.2d 942, 948 (Cal. 1968) (holding that a "verdict of murder in the first degree on a theory of a wilful, deliberate, and premeditated killing is proper only if the slayer killed as a result of careful thought and weighing of considerations; as a [d]eliberate judgment or plan; carried on coolly and steadily" (citations, internal quotation marks, and alterations omitted)).

Moreover, "it is well-recognized [under Nevada law] that in a prosecution for murder evidence of the intoxication of the accused is relevant for the purpose of a jury determination whether the defendant lacked the capacity to deliberate and premediate [sic] required of first degree murder." *Jackson v. State*, 438 P.2d 795, 797 (Nev. 1968) (citing a number of cases from as early as 1877); *see also* Nev. Rev. Stat. § 193.220 ("[W]henever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of the person's intoxication may be taken into consideration in determining the purpose, motive or intent.").

The jury learned at trial that at the time Riley committed the murder, he was very upset – "he started crying, had tears in his eyes, talking about he was tired of stupid shit and about living with dope." The jury also learned that Riley had been smoking crack cocaine prior to the murder, including smoking a rock almost immediately before forming the intent to kill – and then shooting – Bollin. These uncontested facts could easily have led the jury to have a reasonable doubt whether Riley had acted with "coolness and reflection" or undertaken a "dispassionate weighing process."

The state points out that there was some evidence that could have supported a finding of deliberation – namely, that after Bollin told Riley that he would have to kill him in order to take his drugs, Riley asked Bollin whether he was ready to die, and allowed him to take a final hit before shooting him. It is true that this evidence, when viewed in the light most favorable to the prosecution, would have permitted a rational trier of fact to find deliberation. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But the claim we consider here is one of instructional error, not of insufficiency of the evidence; a showing that evidence exists which could rationally be viewed as reflecting deliberation is not enough to establish that the error was harmless. "[W]e cannot say, with fair assurance," that the jury, if properly instructed, would have concluded beyond a reasonable doubt that Riley's verbal exchange with Bollin, when considered alongside the evidence that he was tearful and high, demonstrated not only willfulness and premeditation, but also cool, reflective deliberation. *See Arnold v. Runnels*, 421 F.3d 859, 868 (9th Cir. 2005).

Our conclusion that this error was not harmless is further bolstered by the prosecutor's heavy reliance on the instruction

in his closing argument. He read the instruction aloud, and erroneously reiterated that "[t]he difference between second-degree murder and first-degree murder is that second-degree murder is an intentional, malicious killing but without premeditation." The prosecutor repeatedly argued to the jury that Riley had engaged in premeditation – the only *mens rea* element that the instruction required it to find – through "successive thoughts of the mind." He informed the jury that in Nevada, first-degree murder is

> just this: It may be as instantaneous as successive thoughts of the mind. . . . You have to aim the shotgun. That's a thought. Pull the hammer all the way back through half cock. That's a thought. Pull the trigger after you have pulled the hammer. That's a thought. Those are successive thoughts of the mind. And that's the reason this is first-degree murder.

The state makes two arguments in its attempt to undermine Riley's showing of prejudice, but neither is persuasive.

First, the state argues that the error was harmless because defense counsel did not argue that Riley was too upset or intoxicated to deliberate, but rather asserted that another person – namely, Jackson – had been the shooter. Regardless, the state bore the burden of proving each and every *mens rea* element of first-degree murder beyond a reasonable doubt, even though the defense theory of the case did not specifically put those elements at issue. This is presumably why the prosecutor paid considerable attention to the question

of Riley's mental process and its bearing on the distinction between first- and second-degree murder.

Second, the state observes that the jury was instructed on, and could have convicted Riley under, the felony-murder rule, and argues that any instructional error regarding deliberation – which the jury need not find to convict under the felony-murder rule – was therefore harmless.[9] Our precedent makes clear, however, that the relevant question is "not simply whether we can be reasonably certain that the jury *could* have convicted [Riley] based on the valid theory of felony murder," but whether "we can be reasonably certain . . . that the jury *did* convict [him] based on the valid felony murder theory." *Babb*, 719 F.3d at 1035 (citations omitted).

The jury in Riley's case was not asked to specify under which theory it found Riley guilty of first-degree murder; it completed only a general verdict form. "A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam); *see also Babb*, 719 F.3d at 1035 ("When reviewing convictions . . . this Court is limited in its ability to decipher a verdict, and cannot simply substitute its judgment for that of the fact finder. General verdict forms can further blur an already opaque decisionmaking process, leaving us with the sort of grave doubt that prevents us from concluding an error was harmless." (citations omitted)). In *Babb*, we concluded that we could "discern with reasonable probability" that the jury had *in fact* convicted Babb based on

---

[9] Although we reject the state's conclusion, we do not disagree with its premise that the jury could have convicted Riley of first-degree murder based on the felony-murder rule; the jury also found him guilty of robbery.

a felony murder theory despite the absence of a special verdict because "during closing argument, the prosecutor focused almost exclusively on the felony murder theory," and, more important, because "the jury was specifically instructed to only consider premeditated murder if felony murder did not apply." 719 F.3d at 1034. When such an instruction is given, a reasonable certainty that the jury could have convicted based on a felony-murder theory *necessarily implies* a reasonable certainty that the jury did convict based on that valid theory. Here, though, the prosecutor relied heavily on the premeditated murder theory and instruction, and the jury was not told to consider the alternate theories in a particular order. Unlike in *Babb*, we have no reason to believe that the jury in fact decided to convict Riley based on a felony-murder theory rather than on the more traditional first-degree murder charge.

Riley clearly acted wilfully – he intended to kill Bollin – and with premeditation – he formed that intent prior to shooting him. However, the evidence of Riley's cocaine intoxication and emotional agitation might well have created reasonable doubt as to the third element of first-degree murder, the one the court's instructions failed to identify as an independent element: deliberation. Because the prosecutor relied on that failure in his closing argument, repeatedly returning to the language of the instruction itself in arguing the premeditated murder theory, and because the general verdict of guilt does not allow us to determine that the jury based its conviction on a different theory, the error was not harmless. As we are in "grave doubt," we conclude that Riley was prejudiced.

## VI.  Conclusion

The judgment of the district court is reversed. This case is remanded with instructions to grant the writ unless the State of Nevada elects to pursue a new trial within a reasonable amount of time.

**REVERSED and REMANDED.**