**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 20 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD M. REYES, | No. 16-56372 |
| Petitioner-Appellant, | D.C. No. 2:15-cv-04644-JGB-KES |
| v. | |
| W. L. MONTGOMERY, Acting Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted November 14, 2018
Pasadena, California

Before: PAEZ, PARKER,[**] and CLIFTON, Circuit Judges.

Petitioner Richard M. Reyes appeals the district court's denial of his habeas petition challenging his first-degree murder conviction. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we reverse.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

## I.    Background

Reyes was charged and tried for the murder of 14-year-old Daniel Rodriguez along with co-defendant Roberto G. Barrera.

Before losing consciousness, Daniel told police that members of the Westside Gang ("Westsiders") shot him.  Three Westsiders testified against Reyes and Barrera at trial.[1]

Keith Sullivan testified that he had driven Barrera and Richard Lopez in search of rival gang members.  The men retrieved a rifle from Reyes, and when they did so, Lopez got out of the car and Reyes got in the back seat.  Then, when they encountered Daniel, Barrera and Reyes got out of the car and started shooting.  The State charged Sullivan with Daniel's murder and he agreed to testify against Reyes and Barrera in exchange for a shorter sentence.

Edward Munoz testified that he was at another Westsider's house the night of the shooting.  Sullivan, Barrera, and Reyes showed up at the house and said that they had shot someone—specifically, Munoz recalled Barrera describing shooting over the top of the car.  In return for his testimony, Munoz received leniency in drug charges pending against him.

Jorge Hernandez testified at trial that Reyes had told him about the shooting the day after it occurred.  Before trial, however, police had questioned Hernandez

---

[1] We do not discuss all evidence presented at trial.

about the shooting for two days, and he had maintained that he knew nothing about it. Then, between the interrogation and trial, Hernandez told a detective that Lopez was involved. Later still, he said Sullivan, Barrera, and Reyes were involved. In return for his testimony, Hernandez hoped to qualify for a visa so that he could remain in the United States.

Reyes maintained that he was not present at the shooting. His jury watched a videotaped statement that Reyes made to a detective. In it, Reyes described the day of the murder and said that he provided the guns to Sullivan, Barrera, and Lopez. Reyes denied going with Sullivan, Barrera, and Lopez to the shooting, and insisted that he was instead at a fellow Westsider's house when the shooting occurred.

The trial court instructed the jury on three theories of liability for first-degree murder: (1) Reyes was the direct perpetrator of a willful, deliberate, and premeditated murder; (2) Reyes directly aided and abetted a perpetrator in the killing; and (3) Reyes aided and abetted the commission of an assault with a firearm and the murder was a "natural and probable consequence" of the assault. "A natural and probable consequence is one that a reasonable person would know is likely to occur if nothing unusual intervenes." The trial court also instructed the jury to make additional findings, including whether that "Reyes personally used a

3

firearm in the commission of the [] offense and proximately caused the death of Daniel."

During three days of deliberations, the jury made several requests to review specific evidence and for clarification of the instructions. The jury ultimately found Reyes guilty of first-degree murder. The jury could not reach unanimity as to the allegation that Reyes personally used a firearm, splitting six to six as to that allegation. Reyes received a total sentence of 50 years to life imprisonment.

The California Supreme Court subsequently decided *People v. Chiu*, 325 P.3d 972 (Cal. 2014), holding that "an aider and abettor may not be convicted of first-degree *premeditated* murder under the natural and probable consequences doctrine." *Id.* at 974 (emphasis in original). In light of *Chiu*, Reyes filed a habeas petition in the California Supreme Court. The California Supreme Court denied this petition without comment.

Reyes then filed a federal habeas petition. The district court held that the California Supreme Court had a reasonable basis for rejecting Reyes's habeas petition because the instructional error was not prejudicial.

## II.     Standard of Review

This court may grant habeas relief if it determines that Reyes suffered a violation of his federal constitutional rights and the state court's adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an

4

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(a), (d).

A harmless error standard applies in determining whether habeas relief must be granted due to a constitutional error. *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2014). An error is not harmless if it has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Under section 2254(d), this court reviews for reasonableness a state court's harmless error finding. *Davis*, 135 S. Ct at 2199.

### III. Natural and Probable Consequences Instruction

Under clearly established Supreme Court precedent, an instructional error that allows the jury to convict the defendant under multiple theories of guilt, including one that is invalid, is an error of constitutional magnitude. *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008).

The trial court instructed the jury on three theories of liability, including the natural and probable consequences doctrine. An aider and abettor may not be convicted of first-degree murder under the natural and probable consequences doctrine in California. *Chiu*, 325 P.3d at 974. The district court correctly found that this was a constitutional error, and the State concedes constitutional error.

5

Accordingly, Reyes has demonstrated that the state court's adjudication satisfied 28 U.S.C. § 2254(d)(1).[2]

## IV. Prejudice

This case turns on whether the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638. If we are left in "grave doubt" about the likely effect of an error on the jury's verdict, then "that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000). Examining an instructional error for harmlessness is not the same as reviewing the sufficiency of the evidence. *Riley v. McDaniel*, 786 F.3d 719, 725-26 (9th Cir. 2015). "[A] showing that evidence exists which could rationally be viewed as reflecting deliberation is not enough to establish that the error was harmless." *Id*. at 726. The question is not whether the jury could have convicted Reyes under a valid theory based on the evidence presented, but whether this court can be reasonably certain that the jury did convict him based on a valid theory. *Id*. at 726 (citing *Babb v. Lozowsky*, 719 F.3d 1019, 1035 (9th Cir. 2013)).

---

[2] Reyes also argues that the state court's adjudication satisfied section 2254(d)(2). Because a petitioner need not satisfy both sections 2254(d)(1) and (2), we do not address the 2254(d)(2) argument. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011).

There are several reasons for grave doubt that the jury relied on a valid theory of liability. First, the trial court directed the jury to the unconstitutional instruction during deliberations. Where a jury expresses confusion, a trial judge does not violate the constitution by only "directing [the jury's] attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Here, in contrast, when the jury asked for clarification about first-degree murder, the trial court highlighted the constitutionally inadequate theory by responding, in part, "A First or Second Degree Murder conviction can also be based upon a Natural and Probable Consequences theory."

Second, the State argued to the jury that Reyes could be found guilty of first-degree murder under the natural and probable consequences theory even if he was not one of the shooters or even present at the shooting. Reyes's defense was that although he provided the firearms, Lopez and Barrera were the two shooters in Sullivan's car. In both its closing and rebuttal arguments, the State informed the jury that, even if the jury believed Reyes's defense, they would still have to convict him under the natural and probable consequences theory of liability.[3] The jury

---

[3] In a state habeas proceeding that also addressed a first-degree murder conviction where the jury had been instructed on the natural and probable consequences theory, a California appeals court reasoned, "because the prosecutor highlighted this theory during his closing argument, [the court could not] say that jurors did not rely on the doctrine in finding defendant guilty of first degree murder." *In re*

7

requested a transcript of the State's closing arguments, which shows an attention to the State's arguments.

Third, the jury notes to the trial judge repeatedly requested review of the evidence that supported Reyes's defense. The evidence to support Reyes's theory included: Reyes's videotaped statement; Hernandez's initial statement to the police that Lopez was involved in the shooting; and Sullivan's cell phone records, showing that he called Reyes at a time when they would have been together if Reyes had been one of the shooters. In the first note, the jury asked to view Reyes's videotaped statement and the section of the transcript of Hernandez's testimony about Lopez. In another note, the jury requested Sullivan's cell phone records. These notes show the jury examined the evidence that supported the natural and probable consequences path to conviction.

Fourth, "[l]onger jury deliberations weigh against a finding of harmless error because lengthy deliberations suggest a difficult case." *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (en banc) (quotation omitted); *see also Gibson v. Clanon*, 633 F.2d 851, 855 n.8 (9th Cir. 1980) ("[I]t does not seem possible that the jury would have deliberated nine hours over several days if the jurors did not have serious questions as to the credibility of the eyewitnesses.").

---

*Johnson*, 246 Cal. App. 4th 1396, 1408, *as modified* (May 16, 2016) (quotation omitted).

8

Reyes's jury deliberated for three days, which demonstrates it did not find the case straightforward.[4]

Finally, the district court's reason for denying habeas relief is unpersuasive because it assumes that, even under the natural and probable consequences theory of liability, the jury was required to find that Reyes was a shooter. Not so. Under the natural and probable consequences theory, the jury would need to find Reyes guilty of assault. The district court reasoned that because "there was no evidence that anyone struck Daniel with a firearm," the jury had to find that Reyes had committed an assault by shooting at Daniel. This reasoning incorrectly assumes that the jury could not have found Reyes guilty of assault with a firearm by aiding and abetting an assault with a firearm.

The jury was instructed that Reyes could be guilty of a crime by aiding and abetting the crime. Nothing in the record suggests that the instruction regarding aiding and abetting did not apply to the instructions on assault or natural and probable consequences. In fact, the State argued to the jury that aiding and abetting an assault constitutes murder. After referencing assault, the State explained that by "giv[ing] somebody a gun and bullets" to "go[] off looking for somebody to kill," a defendant can be responsible for any resulting murder under the natural and probable consequences theory. The district court failed to

---

[4] In contrast, Barrera's jury deliberated for approximately 75 minutes.

recognize that the jury may have found Reyes guilty under the natural and probable consequences theory because he aided and abetted an assault with a firearm by providing it to the shooters.

Taken together, the trial court's attention to the natural and probable consequences theory in response to a jury question and the State's attention to it in closing arguments, the specific evidence that the jury sought to review, three days of deliberations, and the lack of jury unanimity for the personal use of a firearm allegation, leave us in grave doubt about the effect of the error on the jury's verdict.[5] The natural and probable consequences instruction was a constitutional error and prejudiced Reyes.

For the above reasons, we reverse the judgment of the district court and remand with directions to issue a conditional writ of habeas corpus.[6]

**REVERSED AND REMANDED.**

---

[5] We note that Reyes also argues that the jury's inability to reach a unanimous finding on the personal use of a firearm allegation indicates the jury relied on the natural and probable consequences theory; however, we do not rely on that argument in our prejudice analysis.

[6] As the parties agreed at oral argument, on remand to the state trial court, Reyes may be resentenced for second-degree murder or retried for first-degree murder with proper instructions. *See Chiu*, 325 P.3d at 981.