**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BILLY RAY RILEY, *Petitioner-Appellee*, | No. 17-15335 |
| v. | D.C. No. 3:01-cv-00096-RCJ-VPC |
| TIMOTHY FILSON; AARON D. FORD; STATE OF NEVADA, *Respondents-Appellants.* | OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted February 8, 2019
Arizona State University, Phoenix

Filed August 9, 2019

Before: M. Margaret McKeown, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of the State of Nevada's motion pursuant to Fed. R. Civ. P. 60(b)(6) for relief from the district court's judgment granting—on remand from this court's decision in *Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015) ("*Riley I*")—Billy Ray Riley's habeas corpus petition challenging his first-degree murder conviction.

In the Rule 60(b) motion, the State argued that post-*Riley I* decisions of the Nevada Supreme Court changed the elements for first-degree murder in Nevada in 1991, when Riley's murder conviction became final, thus requiring this court to eschew its earlier interpretation of Nevada law.

The panel held that the recent Nevada Supreme Court decisions do not disagree about the relevant state-law question that was the basis for *Riley I*: whether, at the time of Riley's conviction, first-degree murder in Nevada required three discrete elements for mens rea. The panel wrote that the decisions simply disagree about whether these elements need to be separately defined, and do not constitute a change in the relevant law required to support the State's Rule 60(b)(6) motion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jeffrey M. Conner (argued), Assistant Solicitor General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Carson City, Nevada; for Respondents-Appellants.

David Anthony (argued) and Benjamin H. McGee III, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

The straightforward question before us is whether the Nevada Supreme Court has, since our prior decision in this case, changed the elements for first-degree murder in Nevada in 1991, when Billy Ray Riley's murder conviction became final. *See Riley v. McDaniel*, 786 F.3d 719, 723 (9th Cir. 2015) ("*Riley I*"). The State of Nevada claims that later Nevada Supreme Court decisions require us to eschew our earlier interpretation of Nevada law. While those recent Nevada Supreme Court decisions take issue with *Riley I*, they do not disagree about the relevant state-law question that was the basis for that decision: whether, at the time of Riley's conviction, first-degree murder in Nevada required three discrete elements for mens rea. Rather, they simply disagree about whether these elements needed to be separately defined. *See Adams v. State*, No. 60606, 2016 WL 315171, at *2 (Nev. Jan. 22, 2016); *Canape v. State*, No. 62843, 2016 WL 2957130, at *2 n.5 (Nev. May 19, 2016); *Leavitt v. State*, 383 P.2d 751 (Nev. 2016) (mem.), *subsequently published at* 386 P.3d 620, 620–21 (Nev. 2016)

(per curiam). A close look at the relevant cases reveals that no change in state law undermines *Riley I*'s interpretation of these requisite mens rea elements. The district court did not abuse its discretion by denying the State's motion for relief from the judgment under Federal Rule of Civil Procedure 60(b)(6), which was predicated on a purported change in state law. We affirm.

## I. PROCEDURAL BACKGROUND

Riley was tried in 1990 and his conviction for robbery and first-degree murder became final a year later. *Riley I*, 786 F.3d at 721, 723. Riley was sentenced to death for the first-degree murder conviction, which is defined in part as "willful, deliberate and premeditated killing." Nev. Rev. Stat. § 200.030(1)(a); *Riley I*, 786 F.3d at 721. He challenged the district court's denial of his federal habeas petition with respect to the murder conviction and death sentence in *Riley I*

In *Riley I*, this court reversed and remanded to the district court to grant Riley's petition. We concluded the premeditation instruction given during his trial, commonly referred to as the *Kazalyn* instruction,[1] removed the statutory element of deliberation from the jury's consideration, violating the Due Process Clause. *Id.* at 723–24 (citing *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979)). The *Kazalyn* instruction "define[s] deliberation as a part of premeditation, rather than as a separate element." *Id.* at 723. Although the *Kazalyn* instruction is not facially

---

[1] The instruction is named for the Nevada Supreme Court case that first discussed it, *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992) (per curiam), although the instruction had been used previously. *Riley I*, 786 F.3d at 723.

unconstitutional, it "violates due process if, at the time it was given, Nevada law required the state to prove deliberation as a discrete *mens rea* element." *Id.* at 724. In 1991, the Nevada Supreme Court required that "*all three elements*, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder." *Id.* at 723 (emphasis added) (quoting *Hern v. State*, 635 P.2d 278, 280 (Nev. 1981)). Thus, when Riley's conviction became final, "deliberation was a discrete element of first-degree murder in Nevada." *Id.* Because the instruction at Riley's trial mandated a finding of "willful, deliberate and premeditated murder" if the jury believed the killing was "the result of premeditation," the instruction impermissibly subsumed the element of deliberation within premeditation. *Id.*

Following the district court's grant of Riley's habeas petition on August 19, 2016, the State filed a motion for relief from the judgment pursuant to Rule 60(b)(6). The State argued that three intervening unpublished decisions of the Nevada Supreme Court undermined *Riley I*'s interpretation of state law.[2] The district court denied the State's motion.

## II. ANALYSIS

### A. Standard for Relief Under Rule 60(b)(6)

We require "'extraordinary circumstances' justifying the reopening of a final judgment" under Rule 60(b)(6) and have outlined "six factors that may be considered, among others, to evaluate whether extraordinary circumstances exist."

---

[2] *Leavitt* subsequently was published at the request of the State. *See Leavitt*, 386 P.3d at 620 n.1.

*Lopez v. Ryan*, 678 F.3d 1131, 1135 (9th Cir. 2012) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). We evaluate the denial of Rule 60(b)(6) relief under the abuse of discretion standard but, of course, an abuse of discretion manifests where the decision rests "upon an erroneous view of the law." *Phelps v. Alameida*, 569 F.3d 1120, 1131 (9th Cir. 2009); *see also Buck v. Davis*, 137 S. Ct. 759, 777 (2017).

Here, the key issue is whether there was "a change in the law," and so we do not need to reach the other five factors if there was no change. *Jones v. Ryan*, 733 F.3d 825, 839 (9th Cir. 2013) (citing *Phelps*, 569 F.3d at 1135–36). Even though a legal change may be persuasive if it is "clear and authoritative," *Phelps*, 569 F.3d at 1131 (quoting *Polites v. United States*, 364 U.S. 426, 433 (1960)), a change in the law does not always supply sufficient conditions for granting the motion. *Phelps*, 569 F.3d at 1133 (citing *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987)).

The standard for a Rule 60(b)(6) motion is high, and such "relief should be granted 'sparingly' to avoid 'manifest injustice.'" *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)). "Such circumstances 'rarely occur in the habeas context.'" *Jones*, 733 F.3d at 833 (quoting *Gonzalez*, 545 U.S. at 535).

## B. Intervening Nevada Supreme Court Cases Did Not Change the Law or Undermine *Riley I*

The State's motion is predicated on three Nevada Supreme Court cases decided after *Riley I* that the State argues reject this court's interpretation of Nevada law. We analyze this argument similarly to how we would assess a change in the law. *See, e.g.*, *Ritter*, 811 F.2d at 1401.

Both before and after Riley's conviction, the Nevada Supreme Court explicitly held that the mens rea required for first-degree murder includes three distinct elements—willfulness, deliberation, and premeditation. *Leavitt*—the only precedential opinion that the State asserts muddies the waters—does not undermine that interpretation of Nevada law. Nor does the Nevada Supreme Court's temporary change of heart after Riley's conviction change the outcome in his case.

In *Riley I*, we relied on the Nevada Supreme Court's decision in *Hern*, decided in 1981, to conclude that deliberation and premeditation are separate mens rea elements of the crime of first-degree murder. *Riley I*, 786 F.3d at 723 (citing *Hern*, 635 P.2d at 280). *Leavitt* does not offer anything new. Instead, it expressed disagreement with *Riley I* by suggesting a case available at the time of *Riley I*—*Nika v. State*, 198 P.3d 839 (Nev. 2008) (en banc)—undermined *Hern* and our decision citing it. *Leavitt*, 386 P.3d at 620–21. To support this position, *Leavitt* cited *Nika* because it

> discuss[es] the history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern v. State*, 635 P.2d 278 (Nev. 1981), and explain[s] that *prior to Byford* [*v. State*, 994 P.2d 700 (Nev. 2000) (en banc),] this court had not required separate *definitions* of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation" eventually approved in *Kazalyn* and *Powell* [*v. State*, 838 P.2d 921 (Nev. 1992) (per curiam)].

*Id.* (emphasis added) (citing *Nika*, 198 P.3d at 851).[3]

A close reading of *Nika* thus becomes a focal point of our analysis. *Nika* is entirely in line with our understanding of Nevada law in *Hern* and its assessment of the key state-law question of the mens rea elements in 1991. What the State's argument misses is that *Nika* recognized that "the *Hern* court stated that '[i]t is clear from the statute that *all three elements*, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder.'" *Nika*, 198 P.3d at 846 (alternation in original) (emphasis added) (quoting *Hern*, 635 P.2d at 280).

Additionally, *Nika*'s focus on whether Nevada law requires separate *definitions* of the statutory terms premeditation and deliberation is a separate state-law question from whether these terms are distinct mens rea *elements* of first-degree murder, which was at issue in *Riley I*. *See Nika*, 198 P.3d at 842, 845; *Riley I*, 786 F.3d at 723–24. Relevant here, *Nika* emphasized that "the *Hern* court did not specifically define 'premeditation' and 'deliberation.'" *Nika*, 198 P.3d at 846. As the Nevada Supreme Court has explained, "[b]efore *Kazalyn*, [decided in 1992,] it appears that 'deliberate' and 'premeditated' were both included in jury instructions without being individually defined but also without 'deliberate' being reduced to a synonym of 'premeditated.'" *Byford*, 994 P.2d at 713. Thus, at the time of Riley's trial and conviction, the three separate mens rea elements did not need to be individually defined, although

---

[3] Like *Leavitt*, the two unpublished, non-binding cases on which the State relies provide nearly identical discussions of *Nika*, so the same analysis applies. *See Adams*, 2016 WL 315171 at *2 & n.3; *Canape*, 2016 WL 2957130 at *2 n.5.

each element needed to be proven beyond a reasonable doubt.

*Byford* further emphasized the distinction between definitions and elements. The Nevada Supreme Court concluded there were two separate problems with the *Kazalyn* instruction: it defined only premeditation without defining deliberation *and* it mandated a finding of first-degree murder if the jury found only premeditation, which erased deliberation as a distinct mens rea element. *Byford*, 994 P.2d at 713–14. The court thus distinguished between the need to articulate each of the elements and the need to define those elements.

However, the State argues that whether these statutory terms are separate elements or require separate definitions is functionally the same issue where the State defines those elements as effectively encompassing each other. The thrust of the State's position is that, despite *Hern*'s conclusion that first-degree murder consisted of three separate mens rea elements and that "all three elements . . . must be proven beyond a reasonable doubt," *Hern*, 635 P.2d at 280, the Nevada Supreme Court understood those elements to mean functionally the same thing and merged the three into a single concept of intent.

The State's position fails in light of the unequivocal language in *Hern* and the principle that "a state court is not free to define an element out of existence" because "every element of a crime must be proven beyond a reasonable doubt." *Goldyn v. Hayes*, 444 F.3d 1062, 1070 (9th Cir. 2006). Applied here, the Nevada Supreme Court is not free to define the established element of deliberation out of existence by subsuming it within premeditation, which is the effect of the *Kazalyn* instruction given during Riley's trial.

Ultimately, neither *Leavitt* nor the two non-precedential cases undermine *Riley I*'s interpretation of 1991 Nevada law as announced in *Hern*. These three cases' reliance on *Nika*, and its focus on the fact that the Nevada Supreme Court did not require separate *definitions* of the statutory mens rea elements when *Hern* was decided, are irrelevant to *Riley I*'s interpretation of Nevada law concerning whether the mens rea terms were separate *elements*.[4] Thus, these cases do not constitute a change in the relevant law required to support the State's Rule 60(b)(6) motion. Because there has been no change in the law, the central factor in this analysis, we do not reach the other factors.

## C.  Deference to the Nevada Supreme Court

Our interpretation of Nevada's first-degree murder statute affords considered respect and deference to the Nevada Supreme Court. *Hern* was good law when Riley's conviction became final in 1991 and clearly recognized that all three mens rea elements of first-degree murder must be proven beyond a reasonable doubt. *Hern*, 635 P.2d at 280. The Nevada Supreme Court's recent pronouncement about the required elements for first-degree murder, *Byford*, confirms the same elements recognized in *Hern*. *Byford*, 994 P.2d at 713–14; *see also Riley I*, 786 F.3d at 724.

To be sure, the Nevada Supreme Court did take a short detour in its thinking about mens rea. Along the way from *Hern* in 1981 to *Byford* in 2000, the court "changed its mind" and, in 1992 in *Powell*, held that there is one, unified mens

---

[4] For the same reason, the State's reliance on *Babb v. Lozowsky*, 719 F.3d 1019, 1030 (9th Cir. 2013), for the proposition that "this Court recognized that the Constitution does not compel a state to discreetly [sic] define the term 'deliberate' by giving it a different meaning than the term 'premeditated'" is inapposite.

rea element: "'deliberate, premeditated and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result.'" *Riley I*, 786 F.3d at 723–24 (quoting *Powell*, 838 P.2d at 927, *vacated on other grounds*, 511 U.S. 79 (1994)). But, in 2000, "the Nevada Supreme Court again reversed course, abrogating *Powell*" by holding in *Byford* that the first-degree murder statute includes three separate mens rea elements. *Riley I*, 786 F.3d at 724. *Byford* explained that "in *Powell* we overlooked earlier pronouncements of this court which recognized that 'deliberate' and 'premeditated' define distinct elements." *Byford*, 994 P.2d at 713–14 (citing *Hern*, 635 P.2d at 280). In interpreting *Byford*, *Nika* explained it amounted to a "change in state law" that "abandoned the line of cases starting with *Powell*." *Nika*, 198 P.3d at 847, 849. So for a short period—from 1992 to 2000—Nevada operated under the principle that the three elements were merged. However, this occurred *after* Riley's conviction was final. Thus, before and after *Powell*, the Nevada Supreme Court interpreted its first-degree murder statute to include three distinct mens rea elements—an interpretation to which we defer.

Because there was no change in Nevada law that affects *Riley I*'s interpretation of the required elements for first-degree murder in Nevada when Riley's conviction became final, the district court did not abuse its discretion by denying the State's motion under Rule 60(b)(6). The judgment of the district court is **AFFIRMED.**