**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUAN MANUEL REYES, | No. 18-55232 |
| Petitioner-Appellant, | D.C. No. 8:16-cv-02125-GW-AFM |
| v. | |
| RAYMOND MADDEN, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted February 12, 2019
Pasadena, California

Before: D.W. NELSON and CALLAHAN, Circuit Judges, and KORMAN,[**]
District Judge.

A jury convicted petitioner Juan Manuel Reyes of first-degree murder, three

counts of attempted premediated murder, and other crimes for his role in a gang-

related shooting that killed Abraham Ortega. It also found true a special

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

circumstance enhancement mandating a penalty of death or life without parole, which applies where the "defendant intentionally killed the victim" for gang purposes "while . . . an active participant in a criminal street gang." Cal. Penal Code § 190.2(a)(22).

At trial, the prosecutor argued that petitioner aided and abetted first-degree murder by starting a fight with a rival gang and continuing to fight until a codefendant could arrive at the scene with a gun. The prosecutor advanced and the judge instructed the jury on two theories of aiding and abetting liability: *first*, that petitioner, acting with malice aforethought, directly aided and abetted the murder, and *second*, that petitioner aided and abetted assault, battery, or disturbing the peace, of which first-degree murder was a natural and probable consequence.

Based on the holding in *People v. Chiu*, 59 Cal. 4th 155, 167 (2014), it is undisputed that the trial judge erred by instructing the jury on the natural and probable consequences theory of first-degree murder, which did not require the jury to find that petitioner intended to kill. Nevertheless, the Court of Appeal held the error harmless because the intent to kill was a necessary element of the jury's gang special circumstance finding, confirming that the jury relied on a valid theory of conviction. *People v. Reyes*, 2015 WL 3956126, at *3–4 (Cal. Ct. App. June 29, 2015). Petitioner challenges the final judgment of conviction entered after several

2

post-conviction appeals, the details of which we pass over because they are not relevant to the legal issues discussed here.

Under clearly established Supreme Court precedent, "[a] conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008). Because the jury here was instructed on alternative theories of guilt, one of which is concededly invalid, we proceed to evaluate whether the error was harmless, as *Hedgpeth* instructs. *See id.* On habeas review, we may grant relief only if there is "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2198–99 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "[This] standard is so stringent that it 'subsumes' the AEDPA/*Chapman* standard for review of a state court determination of the harmlessness of a constitutional violation." *Hall v. Haws*, 861 F.3d 977, 992 (9th Cir. 2017) (citation omitted).

In holding the error harmless, the Court of Appeal relied on the jury's gang special circumstance finding, on which the trial judge instructed the jury that "the People must prove," *inter alia*, that "the defendant intentionally killed Abraham Ortega." The critical flaw in this analysis is that the gang special circumstance

3

instruction did not define the term "intent to kill" in a way that equates to the *mens rea* required for first-degree murder. Under California law, "[f]irst degree murder . . . is the unlawful killing of a human being with malice aforethought, *but has the additional elements of willfulness, premeditation, and deliberation.*" *Chiu*, 59 Cal. 4th at 166 (emphasis added). These "additional elements" are the specific intent or mental state for first-degree murder.

Specifically, at the outset of the jury instructions, the trial judge instructed the jury that first-degree murder and several other counts, as well as the gang special circumstance, "require a specific intent or mental state" and that "the specific intent and mental state required [would be] explained for the instruction for that crime or allegation." Nevertheless, the trial judge did not instruct the jury that the specific intent and mental state for the gang special circumstance must include "willfulness, premeditation, and deliberation." Nor did he refer the jury to the definition of *mens rea* previously provided for first-degree murder, which included these elements. Thus, the jury's special circumstance finding does not in any way confirm that the jury found the *mens rea*—"willfulness, premeditation, and deliberation"—necessary for first-degree murder.

Our dissenting colleague is correct that petitioner conceded that the special circumstance instruction correctly told the jury that it must find the "intent to kill."

4

But we are not evaluating that instruction in isolation. While the trial court's failure to define "intent to kill" was not itself error, it means that we cannot rely on the jury's finding of an "intent to kill" to infer that it also found "willfulness, deliberation, and premeditation." Nor do we find persuasive the argument that the trial judge cured any error by instructing the jury that it must determine the degree of murder *after* determining guilt for murder generally and properly defining the requisite intent for first-degree murder. This ignores the trial judge's instruction that "[t]he defendant is guilty of *first degree or second degree murder . . .* if you decide that the defendant aided and abetted one of [the non-target offenses] and that *first degree or second degree murder . . .* was the natural and probable result of one of these crimes." This instruction expressly permitted the jury to convict petitioner of first-degree murder under an invalid theory.

Significantly, the Court of Appeal never held that the prosecution established the specific intent or mental state for first-degree murder. Instead, it pointed to certain circumstantial evidence that, in its view, showed petitioner acted with the intent to kill—namely, that he "was out to help his fellow gang members kill Ortega." *Reyes*, 2015 WL 3956126, at *4. While the evidence upon which the Court of Appeal relied may have been barely sufficient to establish an intent to kill, it falls far short of demonstrating "willfulness, premeditation, and deliberation." *See id.*

5

(citing, for example, petitioner's provocative actions toward the victim five days before the shooting). Under these circumstances, as discussed below, it is no surprise that the prosecutor's summation emphasized the natural and probable consequences theory over and over again.

While these are reasons enough not to rely on the jury's gang special circumstance finding as a surrogate for the *mens rea* required for first-degree murder, they are not the only ones. Indeed, another panel of the California Court of Appeal held the same gang special circumstance instruction defective on the direct appeal of petitioner's separately tried codefendant, Manzanares, because it did not require the jury to find that the codefendant acted with the intent to kill. *People v. Manzanares*, 2010 WL 1006906, at *5–6 (Cal. Ct. App. Mar. 19, 2010). Instead, the jury likely examined only the intent of the person who "killed Abraham Ortega"— the shooter. *Id.* at *5. "This possibility was enhanced by the prosecutor's comments in closing argument," during which he "repeatedly reminded the jury that, under the natural and probable consequences doctrine, [Manzanares] was vicariously liable for [the shooter's] actions, regardless of whether he shared [the shooter's] criminal intent." *Id.* at *6. Moreover, the trial judge confusingly used "the defendant" generally throughout the jury instructions, even when referring to defenses pertaining only to the shooter. *Id.* at *4–5 & n.2. After invalidating the special

6

circumstance finding, the Court of Appeal vacated Manzanares's first-degree murder conviction because it could not conclude that the trial judge's instruction on the natural and probable consequences theory was harmless. *In re Manzanares*, 2018 WL 3031641, at *1–2 (Cal. Ct. App. June 19, 2018); *see also People v. Brown*, 247 Cal. App. 4th 211, 226–27 (2016) (*Chiu* error not harmless despite jury's gang special circumstance finding).

The same deficiencies in the gang special circumstance instruction highlighted in *Manzanares* are present here, casting further doubt on the reliability of the special circumstance finding as a proxy for the jury's reasoning. While *Manzanares* did not bind the Court of Appeal in this case, it is significant that six judges of the California Court of Appeal split evenly on the soundness of the special circumstance instruction. This gives us pause before relying on that very instruction to hold a conceded constitutional error harmless in a case involving the same actors, same events, same theory of prosecution, and nearly the same jury instructions.

Moreover, the Court of Appeal's attempt to distinguish *Manzanares* from petitioner's case was based on a critical misreading of the record. Specifically, the Court of Appeal erroneously suggested that the prosecutor discussed the natural and probable consequences theory much earlier than the special circumstances. *People v. Reyes*, 2013 WL 3286209, at *3 (Cal. Ct. App. June 27, 2013). To the contrary,

7

the prosecutor's discussion of the natural and probable consequences theory continued in conjunction with his explanation of the special circumstances. Indeed, at times, it is impossible to tell when the prosecutor was discussing liability for murder versus application of the special circumstances. Considering this significant prejudicial spillover, the jury cannot reasonably be expected to have compartmentalized the prosecution's repeated emphasis on the natural and probable consequences theory. Moreover, the Court of Appeal failed to note that, as in *Manzanares*, the trial judge confusingly used "the defendant" broadly throughout the jury instructions, even for certain defenses pertaining only to the shooter's mental state. *Compare Manzanares*, 2010 WL 1006906, at *4 n.2. Thus, when the trial judge instructed the jury that it must find "the defendant intentionally killed Abraham Ortega" for the gang special circumstance enhancement, the jury may have likewise thought that it should evaluate only the shooter's intent.

According to the dissent, the trial court's instruction that "[u]nless I tell you otherwise, all instructions apply to each defendant," mitigated this confusion. This one-sentence instruction appears 89 transcript pages before the gang special circumstance instruction. And any curative effect was undermined by the prosecutor's suggestion that the jury could simply rely on its first-degree murder verdict to satisfy elements of the special circumstances:

8

Sometimes the law is a little bit redundant. You don't—it sounds like the same. You just say, 'I have got this finding I need to make for this count. The count's guilty, I can make this determination.' And there might be some redundancy, but yours [sic] is just to make these determinations, okay?

In sum, the prosecutor's heavy reliance on the invalid natural and probable consequences theory of first-degree murder, the scant evidence of premeditation (that apparently prompted the prosecutor's reliance on the invalid theory), and the deficiencies in the gang special circumstance instruction leave us in "grave doubt" as to whether the jury's gang special circumstance finding cured the erroneous instruction on the invalid theory of first-degree murder. *See Ayala*, 135 S. Ct. at 2198–99; *Riley v. McDaniel*, 786 F.3d 719, 727 (9th Cir. 2015). Our already grave doubt is further underscored by the jury's extensive five-day deliberations and note indicating confusion regarding petitioner's intent.[1] *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (en banc) ("Longer jury deliberations weigh against a finding of harmless error . . . .") (quotation marks and citation omitted); *Reyes v. Montgomery*, 2018 WL 6720644, at *4 (9th Cir. Dec. 20, 2018) (*Chiu* error

---

[1] The jury asked, "If the perpetrator is found guilty of first degree murder and the other two defendants are found guilty of aiding and abetting, then must those two defendants be found guilty of first degree murder or can they be found guilty of a lesser charge[?]" The judge declined to provide any further instruction. Because an accomplice to first-degree murder must share the principal's mental state, the jury's reference to a "lesser charge" for the alleged accomplices suggests it may have harbored confusion on this issue.

not harmless where, *inter alia*, prosecutor emphasized invalid theory and jury deliberated for three days).

Consequently, we reverse the judgment of the district court and remand with instructions to issue a conditional writ of habeas corpus solely with respect to the first-degree murder conviction. *Reyes*, 2018 WL 6720644, at \*4 & n.6. Petitioner may be resentenced for second-degree murder or retried for first-degree murder with proper instructions. *See Chiu*, 59 Cal. 4th at 168.

This disposition also leaves in place petitioner's attempted premeditated murder convictions, for which he is serving concurrent terms of 20 years to life. *People v. Favor*, 54 Cal. 4th 868, 879–80 (2012), permits conviction for attempted premediated murder on the theory of natural and probable consequences. Because "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus," we reject petitioner's challenge to those convictions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

*Juan Manuel Reyes v. Raymond Madden*, **No. 18-55232**

CALLAHAN, Circuit Judge, dissenting:

The majority applies the wrong standard, and thus, fails to afford the state court the deference it is due. The majority states that *Brecht* subsumes AEDPA. However, *Brecht* does not displace, nor effect in anyway, the initial inquiry of AEDPA/*Chapman*—the highly deferential precondition to federal habeas relief that the state court's rejection was contrary to or involved an unreasonable application of clearly established law or based on an unreasonable determination of facts. In addressing the jury instructions challenged by Reyes, the majority ignores the Supreme Court's repeated instructions that we must defer to reasonable state court decisions. *See, e.g.*, *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Because the state court's rejection of Reyes's claim was reasonable, I dissent.

AEDPA governs Reyes's petition because he filed it more than 20 years after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997). Under the deferential standard imposed by AEDPA, we may not grant a writ of habeas corpus unless the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

1

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 100 (2011).  The

Supreme Court in *Ayala* addresses *Chapman*:

> When a *Chapman* decision is reviewed under AEDPA, "a federal
> court may not award habeas relief under § 2254 unless *the
> harmlessness determination itself* was unreasonable."  [*Fry v. Piller*,
> 511 U.S. 112, 119 (2007)] (emphasis in original).  And a state-court
> decision is not unreasonable if "'fairminded jurists could disagree' on
> [its] correctness."  *Richter, supra*, at 101 (quoting *Yarborough v.
> Alvarado*, 541 U.S. 652, 664 (2004)).

*Ayala*, 135 S. Ct. at 2199 (second alteration in original) (parallel citations omitted).

Reyes therefore must have shown that the state court's rejection of his

habeas claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Id*. (quoting *Richter*, 562 U.S. at 103).  Although we

"need not 'formal[ly]' apply both *Brecht* and 'AEDPA/*Chapman*,'" the Supreme

Court has stated that "AEDPA . . . 'sets forth a precondition to the grant of habeas

relief.'"  *Id*. (first alteration in original) (quoting *Fry*, 511 U.S. at 119).

Importantly, the Supreme Court emphasized that the *Brecht* standard does not

"somehow abrogate[] the limitation on federal habeas relief that § 2254(d) plainly

sets out."  *Ayala*, 135 S. Ct. at 2198.  Therefore, before we can apply the actual

prejudice standard set forth in *Brecht*, we must first determine that the state court's

prior determination constitutes such an "unreasonable" application of Supreme

Court precedent that "fairminded jurists could disagree" with it. *Ayala*, 135 S. Ct. at 2199.

In applying the wrong standard, the majority side-steps the deference owed to the state court's reasonable decision. First, in concluding that the jury did not necessarily convict Reyes of first degree murder because of the defective special circumstances instruction, the majority relies on a contention that was not raised by Reyes and did not form a basis of the state court's decision. The majority finds that the critical flaw in the state court's decision is that the jury instructions failed to define "intent to kill." However, Reyes conceded on appeal that the "instruction given was correct to the extent that it required the jury to find 'the defendant' acted with the intent to kill." Reyes, instead, argued that there was a failure to instruct the jury that he—rather than the actual shooter—personally had the intent to kill.

Reyes conceded that the jury adjudicated the special circumstance instruction only after first finding that Reyes was guilty of first degree murder. Furthermore, the first degree murder instruction explicitly defined the mens rea elements. A challenged jury instruction "may not be judged in artificial isolation" but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten,* 414 U.S. 141, 147 (1973). Here, the jury was instructed that Reyes was charged with murder, which requires finding whether the defendant acted with "a state of mind called malice aforethought." The instruction

3

explains: "Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. . . ." The instructions further explained that if the jury found Reyes guilty of murder, it then had to determine the degree, and the jury was separately instructed on the requisite elements of first degree murder:

> The defendant is guilty of first degree murder if the People have proved that [he] acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if [he] intended to kill. The defendant acted *deliberately* if [he] carefully weighed the considerations for and against [his] choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if [he] decided to kill before committing the act that caused death. The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.[]

The jury was also instructed, "[i]f you find a[] defendant guilty of first degree murder, you must also decide if the People have proved that the special circumstance is true." Reyes conceded that "[i]n order to get to the point where the[ jury was] adjudicating the special [circumstance allegation], the jury had to have already found Reyes guilty of first degree murder." Specifically, for a determination on whether the special circumstance of murder committed for a criminal street gang purpose was applicable, the jury was instructed to determine

4

whether "the defendant did the act[s] charged, but also that [he] acted with a particular intent or mental state." This instruction required that the jury, in applying the special circumstance, determine whether "defendant intentionally killed Abraham Oretega." In light of these jury instructions, a "fairminded jurist" could reasonably conclude that the jury found that Reyes possessed the requisite mens rea to be found guilty of the special circumstance allegation.

Reyes argues that the jury failed to find that he "personally intended to kill" because the jury was never told the word "defendant" in the special circumstances instruction applied *only* to Guerrero (the actual shooter). But the state court concluded that it was "not likely [that the jury] applied the instruction in such a narrow fashion."[1] The state court also rejected Reyes's argument that the prosecutor's summation confused and led the jury to conflate the requirements of the natural and probable consequences doctrine with those of the special circumstances allegation. *See Boyde v. California*, 494 U.S. 370, 384 (1990) (finding that "arguments of counsel generally carry less weight with a jury than do

---

[1]     In *People v. Manzanares*, 2010 WL 1006906 (Cal. Ct. App. Mar. 19, 2010), the California Court of Appeal struck the special circumstance enhancement for Reyes's co-defendant Manzanares for some of the reasons that Reyes argues here. This decision was not binding on the California Court of Appeal in Reyes's case and is not binding on us. Because there is no horizontal stare decisis within California appellate courts, a decision by one appellate panel is not binding on other appellate panels, even those in the same district. *In re Marriage of Shaban*, 88 Cal. App. 4th 398, 409 (2001).

instructions from the court" because the former are "matters of argument, not evidence," and the latter are "definitive and binding statements of the law"). The state court found that the arguments in the summation that Reyes points to were made when the prosecutor was discussing culpability of aiding/abetting murder, not the special circumstances. The state court further found that "[a]t no time was the jury ever told it could apply the doctrine [of natural and probable consequences] to the special circumstances allegation, and we do not believe it is reasonably likely that the jury did so."

Under the "highly deferential" AEDPA standard, *Lindh*, 521 U.S. at 333 n.7, the state court's decision must be given "the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Reyes has not shown how the California Court of Appeal's decision is "objectively unreasonable." *Cullen v. Pinholster*, 563 U.S. 170, 188 n.12 (2011). The jury was properly instructed on the elements of first degree murder, that it must determine whether the "defendant intentionally killed Abraham Oretga," and that "the word defendant applie[d] to each defendant unless . . . instructed otherwise." The state court's denial of Reyes's habeas petition on this ground was not contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent.

Reyes also challenges the instruction on the natural and probable consequences doctrine. I agree with the majority that this theory of liability for

first degree premeditated murder was subsequently invalidated by the California Supreme Court in *People v. Chiu*, 59 Cal. 4th 155, 167 (2014) ("[A] defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine."). I disagree, however, that the California Court of Appeal improperly held that in Reyes's case the error was harmless. As *Chiu* explained, an erroneous instruction can be harmless if "there is a basis in the record to find that the verdict was based on a valid ground." 59 Cal. 4th at 167. The evidence in the record supports the state court's decision that the verdict was based on the valid theory. The state court summarized the evidence:

> 1) Reyes and Ortega's gangs were longstanding rivals, 2) Reyes precipitated the shooting by "hitting-up" Ortega at their school five days earlier, 3) Reyes was involved in instigating and participating in the fistfight that took place immediately before the shooting, and 4) Reyes was right in the mix of the battle when his fellow gang member Guerrero pulled out a gun and started shooting at Ortega's group.

In the context of an escalating conflict, Reyes and his fellow gang members initiated the fight with the rival gang Santa Nita, and Reyes continued fighting even after Guerrero arrived with a gun. The state court reasonably determined that the evidence supports the verdict being based on Reyes directly aiding and abetting premeditated murder.

The state court concluded that because the jury returned a verdict of first degree murder, they necessarily found that Reyes "acted willfully, deliberately, and with premeditation," and thus he intended to aid and abet premeditated murder. In

7

*Chiu*, the jury instruction required that to find the defendant guilty of first degree murder as an aider and abettor, the jury was required to find that the *perpetrator* acted willfully, deliberately, and with premeditation. 59 Cal. 4th at 161. In contrast, the jury here was instructed to determine whether the *defendant* acted willfully, deliberately, and with premeditation, and, as discussed above, the jury was instructed that "the word defendant applies to *each defendant* unless you are instructed otherwise." (Emphasis added). Thus, in my view, the state court's determination that, from the evidence, the jury's verdict was based on the valid theory is not objectively unreasonable.

In sum, I would affirm the district court's denial of Reyes's habeas petition. Reyes has failed, under the deferential AEDPA standard, to show that the state court's decision was contrary to, or involved an unreasonable application of, Supreme Court precedent.